[No. C058815. Third Dist. Sept. 29, 2009.]

GOVERNING BOARD OF RIPON UNIFIED SCHOOL DISTRICT,
Plaintiff and Respondent, v.
COMMISSION ON PROFESSIONAL COMPETENCE, Defendant;
THERESA MESSICK, Real Party in Interest and Appellant.

## COUNSEL

Driscoll & Associates and Thomas J. Driscoll, Jr., for Real Party in Interest and Appellant.

Atkinson, Andelson, Loya, Ruud & Romo, Chesley D. Quaide and Marleen L. Sacks for Plaintiff and Respondent.

Kronick, Moskovitz, Tiedemann & Girard and Diana D. Halpenny for Education Legal Alliance for the California School Boards Association as Amicus Curiae on behalf of Plaintiff and Respondent.

## OPINION

**NICHOLSON, J.**—We address in this appeal a school district's authority to impose a new condition of employment on its teachers in order to satisfy a legislative mandate. State law requires all public school students who are not fluent in English to be taught by teachers who have been certified to teach such English learners. A school district must also ensure that English learners have equal access to all of a school's programs.

To meet these directives, plaintiff Governing Board of Ripon Unified School District (District) adopted a rule requiring all of its teachers to become certified to teach English learners. It also entered into an agreement with the teachers union to impose this requirement as well as pay for the cost of the training and provide an additional stipend. Failure to comply with the directive would ultimately result in termination.

Real party in interest Theresa Messick is the only music teacher at Ripon High School. She refused to obtain the certification, and the District eventually began proceedings to terminate her employment. An administrative law judge determined the District lacked authority to impose the requirement on Messick, but the trial court granted the District's petition for writ of mandate and authorized it to proceed with termination proceedings. Messick appeals the trial court's judgment, and we affirm.

### FACTS

Under federal law, a school district must ensure its students learning the English language are provided equal participation in its programs. The federal Equal Educational Opportunities Act of 1974 (20 U.S.C. § 1703) prohibits

school districts from denying equal educational opportunity to an individual on account of race, color, sex, or national origin by failing "to take appropriate action to overcome language barriers that impede equal participation by its students in its instructional programs." (20 U.S.C. § 1703(f).)

Under state law, students are to be taught English "as rapidly and effectively as possible." (Ed. Code, § 300, subd. (f).) A child who is not proficient in English is designated as an English learner (EL). (Ed. Code, § 306, subd. (a).) EL students are initially taught English under a specially designed curriculum. (Ed. Code, § 305.) They are regularly assessed and, once sufficiently fluent, are moved into regular classrooms. However, they continue to be designated as EL students until they have reached a proficiency level equal to native English speakers. (Ed. Code, § 313.)

Public school teachers are required to be specially certified to teach EL students. (Ed. Code, §§ 44253.3, 44253.4, 44253.10.) The State Department of Education monitors and sanctions school districts that assign an EL student to a teacher who is not certified to teach EL students. (Ed. Code, §§ 44258.9, 45037.)

Messick is employed by the District as a permanent certificated teacher. She holds a single-subject teaching credential in music that was issued to her in 1985 for life. She is assigned to Ripon High School, where she serves as that school's only music teacher.

In May 2002, the State Department of Education determined the District was out of compliance with state law for the 2001–2002 school year because the District had assigned EL students to classes taught by teachers who lacked EL certification. (See Ed. Code, § 44253.1.)

The District responded to the compliance audit by developing an EL plan, which required all certificated teachers to sign a written commitment agreeing to obtain EL certification.[1] The District also negotiated an agreement with the Ripon Unified School District Teachers Association (teachers union) that all certificated staff obtain EL certification by December 30, 2005, or else resign or be terminated. The District agreed to pay for the training if the teacher obtained it through the county office of education, and it agreed to provide the teachers an additional $400 stipend.

Messick is not certified to teach EL students. After the agreement with the teachers union was reached, the District repeatedly asked Messick to sign a

---

[1] Specifically, the District required all teachers to earn a "CLAD [cross-cultural, language and academic development], BCLAD [bilingual, cross-cultural, language and academic development], Bilingual Credential or SDAIE [specially designed academic instruction in English] certificate." For ease of reference, we refer to these certifications collectively as EL certification.

written commitment to receive the EL training. Messick refused to sign the commitment or obtain the training. The District claims Messick ultimately was the only teacher in the District who refused to take the training.

In January 2006, the District began termination proceedings against Messick. (Ed. Code, § 44934.) It filed a written statement of charges charging her with unprofessional conduct, evident unfitness for service, and persistent violation of or refusal to obey the school laws of the state or reasonable regulations prescribed by the State Board of Education or the governing board of the District. (Ed. Code, § 44932, subd. (a)(1), (5), (7).)

Messick filed a motion to dismiss the District's statement of charges with defendant Commission on Professional Competence. The administrative law judge granted Messick's motion and dismissed the accusation.

The District petitioned the trial court for a writ of administrative mandate. The trial court issued the writ and ordered the administrative decision to be set aside. It concluded the District had authority to enter into the agreement with the teachers union, and also had authority to proceed against Messick pursuant to the terms of that agreement.

Messick appeals from the trial court's issuance of the peremptory writ of mandate. She asserts the District lacked authority to impose the EL certification requirement on her. She claims the District's action violated state statutes governing (1) the termination of a teacher with permanent status (one with tenure), (2) the efficacy of teacher credentials, (3) the ability of a district to mandate additional study on threat of salary reduction, and (4) the permissible scope of negotiations between a district and a teachers union.

## DISCUSSION

### I

### *Standard of Review*

"In an administrative mandate proceeding in which the trial court has exercised its independent judgment on the evidence, the trial court's factual determinations are conclusive on appeal if they are supported by substantial evidence. As to questions of law, appellate courts perform essentially the same function as trial courts in an administrative mandate proceeding, and the trial court's conclusions of law are reviewed de novo." (*Jenron Corp. v. Department of Social Services* (1997) 54 Cal.App.4th 1429, 1434 [63 Cal.Rptr.2d 508].)

II

*Scope of District's Authority*

■ Messick's arguments are based on the notion that the Legislature preempted the District's action by various statutes. Before proceeding to address her arguments specifically, it is important to place them in their proper context. In general, a school district has all authority necessary to fulfill its purposes except as expressly limited or preempted by statute. (Ed. Code, § 35160.) Messick thus has the significant burden of showing the District's actions were somehow preempted by state law.

"Since 1849 the California Constitution has contained a broad mandate for public education: 'A general diffusion of knowledge and intelligence being essential to the preservation of the rights and liberties of the people, the Legislature shall encourage by all suitable means the promotion of intellectual, scientific, moral, and agricultural improvement.' (Cal. Const., art. IX, § 1.)

■ "By the terms of the mandate itself, primary authority over public education is vested in the Legislature (cf. also *Hall* v. *City of Taft* (1956) 47 Cal.2d 177, 179–183 [302 P.2d 574]; *California Teachers Assn.* v. *Hayes* (1992) 5 Cal.App.4th 1513, 1524–1525 [7 Cal.Rptr.2d 699]), but the Constitution, and the Legislature itself, have ceded substantial discretionary control to local school districts. Since 1973 the Constitution has provided that '[t]he Legislature may authorize the governing boards of all school districts to initiate and carry on any programs, activities, or to otherwise act in any manner which is not in conflict with the laws and purposes for which school districts are established.' (Cal. Const., art. IX, § 14.) The Legislature has echoed this constitutional provision in Education Code section 35160: '[T]he governing board of any school district may initiate and carry on any program, activity, or may otherwise act in any manner which is not in conflict with or inconsistent with, or preempted by, any law and which is not in conflict with the purposes for which school districts are established.' In 1987, as 'a clarification of existing law under Section 35160,' the Legislature found and declared 'that school districts, county boards of education, and county superintendents of schools have diverse needs unique to their individual communities and programs. Moreover, in addressing their needs, common as well as unique, school districts, county boards of education, and county superintendents of schools should have the flexibility to create their own unique solutions. [¶] . . . In enacting Section 35160, it is the intent of the Legislature to give school districts, county boards of education, and county superintendents of schools broad authority to carry on activities and programs, including the expenditure of funds for programs and activities which,

in the determination of the governing board of the school district, the county board of education, or the county superintendent of schools are necessary or desirable in meeting their needs and are not inconsistent with the purposes for which the funds were appropriated. It is the intent of the Legislature that Section 35160 be liberally construed to effect this objective.' (Ed. Code, § 35160.1; cf. also *id.*, § 14000 ['The system of public school support should be designed to strengthen and encourage local responsibility for control of public education']; *California Teachers Assn.* v. *Hayes, supra,* 5 Cal.App.4th 1513, 1523–1524.) [¶] . . . [¶]

■ "There is a correlative limitation upon the authority of courts to control the actions of local school districts. (Cf. *Johnson* v. *Board of Education* (1986) 179 Cal.App.3d 593, 600–601 [224 Cal.Rptr. 885].) . . .

"It follows that courts should give substantial deference to the decisions of local school districts and boards within the scope of their broad discretion, and should intervene *only in clear cases of abuse of discretion.*" (*Dawson v. East Side Union High School Dist.* (1994) 28 Cal.App.4th 998, 1017–1018 [34 Cal.Rptr.2d 108], italics added.)

Thus, the core issues before us are whether the District has the authority to impose the certification requirement on all of its teachers and to enter into the agreement with the teachers union calling for a teacher's termination if she fails to obtain the EL certification. As a result of Education Code section 35160, Messick must show the District's actions conflict with or are preempted by any law and conflict with the purposes for which school districts are established.

Messick initially argues the Legislature has not required teachers like her who received their teaching credential prior to 2003 to obtain the EL certification. (See Ed. Code, §§ 44259, 44259.5.) That may be so, but the point is irrelevant. As explained, the issue is not whether the Legislature has required Messick to obtain the EL certification. The relevant issue is whether the District has the authority to require Messick to obtain the certification in order to comply with mandates imposed on it by the Legislature.

Messick's point also trivializes the dilemma faced by the District. The District is required to provide its EL students with equal opportunity to all of the District's programs. And the Legislature has required all teachers who teach EL students to be certified to do so. (Ed. Code, §§ 44253.1, 44253.10.) A district is subject to monitoring and penalties if it assigns EL students to a teacher who has not been certified to teach them. (Ed. Code, §§ 44258.9, 45037.) As a result of Messick's refusal to become EL certified, if an EL student registers for a music class, the District can either deny the student the

opportunity to take the class, or it can risk sanctions for assigning the student to Messick. Neither of these options is viable.

Messick also complains that as of yet no EL student has been denied access to music education and the District was terminating her based on an anticipated harm. That may be so, but the Legislature has recognized that the number of EL students in the state is increasing, and it has clearly instructed the state to prepare for this need: "The Legislature finds and declares that almost one million, or one of every five, pupils in California's public schools are of limited English proficiency, and that the number of those pupils is increasing rapidly. In addition, the number of primary languages spoken by California's limited-English-proficient pupils is increasing. The Legislature recognizes that limited-English-proficient pupils have the same right to a quality education as all California pupils. For these pupils to have access to quality education, their special needs must be met by teachers who have essential skills and knowledge related to English language development, specially designed content instruction delivered in English, and content instruction delivered in the pupils' primary languages. It is the intent of the Legislature that the Commission on Teacher Credentialing implement an assessment system to certify those teachers who have the essential skills and knowledge necessary to meet the needs of California's limited-English-proficient pupils." (Ed. Code, § 44253.1.)[2]

Thus, we are left with the narrow question—at least narrower than suggested by Messick in her briefing—of whether the District exceeded its substantial authority when it imposed the EL certification requirement. Unless there is a law that prohibits the District's action, Education Code section 35160 clearly authorizes it. We turn to Messick's specific claims.

### III

*Statutes Governing Termination of Tenured Teachers*

Messick claims her failure to obtain the credential is not a legitimate ground for terminating her, a tenured teacher, because the credential requirement was unlawful. This argument merely begs the question of whether the District's action was preempted by state law. The District can terminate a tenured employee for, among other reasons, unprofessional conduct, evident unfitness for service, and persistent violation of, or refusal to obey, reasonable

---

[2] Messick requests us to take judicial notice of various reports and correspondence prepared by the State Department of Education and the Commission on Teacher Credentialing that contain statistical analyses on the prevalence of EL students in the state. We deny the request, as the material does not satisfy the prerequisites for granting judicial notice. (Evid. Code, § 452, subds. (c), (h).)

regulations prescribed by the District. (Ed. Code, § 44932, subd. (a)(1), (5), (7).) If the District's requirement that all certificated teachers, including tenured teachers, become EL certified is lawful, Messick's persistent refusal to comply with the District's requirement is a lawful ground on which to initiate termination proceedings against her.

## IV

### *Effect of Teacher Credentialing Statutes*

■ Messick claims the District's certification requirement violated statutes governing teacher credentialing and rendered her life credential ineffective. Under state law, her life credential remains valid until revoked (Ed. Code, § 44355, subd. (a)), and it authorizes her to serve as an employee of a school district in the capacity for which the credential was issued (Ed. Code, § 44330). Her credential remains in force as long as it is valid under the laws and regulations that were in effect on the date it was issued. (Ed. Code, § 44259, subds. (e), (g), (h).) Messick asserts the District's action violates these statutory rights by conditioning her enjoyment of these rights on her obtaining an additional certification. We disagree.

The District's requirement does not affect the validity of Messick's credential. The credential licenses her to teach music, but it does not guarantee her employment or tenure, nor does it preempt the District from conditioning her employment to teach music. The District modified the terms of her employment, but it in no way modified the authority granted her under her credential. She remains authorized to teach music in any district that will hire her.

Nothing in the credentialing statutes prohibits the District from imposing and changing the terms of her employment for teaching her credentialed subject. The statutes prevent the District from altering the terms of her credential, but Messick has not shown that the District's EL certification requirement alters those terms. State credentialing law does not prevent the District from requiring a teacher to satisfy additional certification requirements in order to continue in employment.

## V

### *Statutory Limit on District's Power to Require Training*

■ Education Code section 45033 prohibits a school district from reducing a tenured teacher's salary on account of the teacher's failure to meet

additional education requirements imposed by the district.[3] Messick claims the District violated this statute because its action imposed the largest salary decrease possible—cessation of salary—for her failure to fulfill the EL certification requirement. We disagree.

■ "When construing a statute, we must 'ascertain the intent of the Legislature so as to effectuate the purpose of the law.' [Citation.] The words of the statute are the starting point. 'Words used in a statute . . . should be given the meaning they bear in ordinary use. [Citations.] If the language is clear and unambiguous there is no need for construction, nor is it necessary to resort to indicia of the intent of the Legislature . . . .' [Citation.]" (*Wilcox v. Birtwhistle* (1999) 21 Cal.4th 973, 977 [90 Cal.Rptr.2d 260, 987 P.2d 727].)

Looking at the words of the statute, it is clear it applies only to salaries, not to termination or dismissal. By limiting its reach to annual salaries, the Legislature directed the statute to apply only to ongoing or continuing employees. Here, the District did not decrease Messick's annual salary. It sought to terminate her employment. The statute does not apply in this instance.

Messick claims this reading of the statute creates an exception that swallows the rule; that the Legislature would not rationally intend to forbid a district from reducing a teacher's salary for not fulfilling district education requirements but would allow a district to terminate a teacher for the same conduct. However, the Legislature has enacted separate provisions governing dismissals of tenured teachers. (See Ed. Code, §§ 44932, 44933.) Education Code section 45033 gives no indication it was intended to modify or restrict the statutory grounds on which a district may terminate a tenured teacher. And one of those grounds, unlike the situation contemplated by Education Code section 45033, is the "[p]ersistent violation of or refusal to obey . . . reasonable regulations prescribed . . . by the [District]." (Ed. Code, § 44932, subd. (a)(7), italics added.) This is not the case of an exception swallowing the rule. It is the case of two different rules.[4]

■ Based on the above, it is clear Messick has failed to demonstrate the District's action was preempted by a conflicting state statute. Accordingly, the

---

[3] Education Code section 45033 reads: "The governing board of any school district shall not decrease the annual salary of a person employed by the district in a position requiring certification qualifications for failure to meet any requirement of the district that such person complete additional educational units, course of study, or work in any college or university or any equivalent thereof."

[4] The District asks us to rely on a letter prepared by Education Code section 45033's author requesting the Governor in 1967 to sign the bill into law. Because the statutory language is unambiguous, we need not rely on legislative history. In any event, a letter by a bill's author does not qualify as admissible legislative history. (*Kaufman & Broad Communities, Inc. v. Performance Plastering, Inc.* (2005) 133 Cal.App.4th 26, 37 [34 Cal.Rptr.3d 520].)

action was within the District's authority under Education Code section 35160. Messick, however, claims the District's agreement with the teachers union to implement the requirement was invalid. We conclude this case by reviewing that argument.

VI

*Scope of Permissible Bargaining*

Messick claims the credential requirement was outside the scope of permissible bargaining between the teachers union and the District. She also claims the agreement was an unlawful waiver of statutory requirements regarding the causes and procedures for dismissing a certificated teacher. We disagree with both assertions.

■ The Educational Employment Relations Act (Gov. Code, § 3540 et seq.; EERA) establishes and governs collective bargaining between teachers unions and school districts. Pursuant to the EERA, school district employers "shall meet and negotiate with and only with representatives of employee organizations selected as exclusive representatives of appropriate units upon request with regard to matters within the scope of representation." (Gov. Code, § 3543.3.) The scope of representation is limited by statute to "matters relating to wages, hours of employment, and other terms and conditions of employment" as defined. (Gov. Code, § 3543.2, subd. (a).)

If a matter is not defined as a term and condition of employment, the matter is reserved to the District and may not be a subject of negotiation unless the District chooses to consult with the union on such a matter. (Gov. Code, § 3543.2, subd. (a).)

However, the District cannot negotiate the causes and procedures for dismissing a credentialed teacher. (Gov. Code, § 3543.2, subd. (b).) A collective bargaining agreement also cannot supersede the Education Code. (Gov. Code, § 3540.)

■ Our Supreme Court has agreed with the state Public Employment Relations Board, the agency that oversees the EERA, that the EERA's list of matters within the scope of collective bargaining is not exclusive. Even if a matter is not specifically defined as a condition of employment by the EERA, that matter is still negotiable if " '(1) it is logically and reasonably related to hours, wages or an enumerated term and condition of employment, (2) the subject is of such concern to both management and employees that conflict is likely to occur and the mediatory influence of collective negotiations is the appropriate means of resolving the conflict, and (3) the employer's obligation

to negotiate would not significantly abridge his freedom to exercise those managerial prerogatives (including matters of fundamental policy) essential to the achievement of the District's mission.' [Citation.]" (*San Mateo City School Dist. v. Public Employment Relations Bd.* (1983) 33 Cal.3d 850, 858 [191 Cal.Rptr. 800, 663 P.2d 523].)

In short, the EERA "specifies that labor and management may supplement or depart from the Education Code in limited 'matters relating to wages, hours of employment, and other terms and conditions of employment.' Matters outside the scope of subdivision (a) are 'reserved to the public school employer,' may not be the subject of collective bargaining, and may not supersede other provisions of the Education Code. (Gov. Code, §§ 3543.2, subd. (a), 3540.)" (*Board of Education v. Round Valley Teachers Assn.* (1996) 13 Cal.4th 269, 283 [52 Cal.Rptr.2d 115, 914 P.2d 193].)

The EL certification requirement negotiated by the District is not specifically defined as a condition of employment by the EERA. Furthermore, as discussed above, the requirement is not preempted by the Education Code. It is, however, a matter reasonably related to hours, wages, and conditions of employment, and thus was an appropriate subject of negotiation.

The District and the teachers union negotiated a condition of continuing employment that all teachers become EL certified. They also negotiated a financial stipend as well as District payment of the cost of obtaining the certification. These points relate to wages and conditions of employment, and thus were negotiable.

Even if the certification requirement were not related to hours, wages, or conditions of employment, the District still had the right under the EERA to consult with the union on the requirement. (Gov. Code, § 3543.2, subd. (a).) That the District chose to do so to negotiate an agreement with the union, instead of imposing the requirement outright under its reserved authority, does not establish a violation of the EERA.

Messick argues the agreement is an agreement on the causes and procedures for dismissing a credentialed teacher, a matter which the District may not negotiate and the employee cannot be required to waive. (Gov. Code, § 3543.2, subd. (b); Ed. Code, § 44924.) It is not. By statute, the District can terminate a permanent teacher such as Messick only for, among other stated grounds, persistent violation of or refusal to obey a District regulation. (Ed. Code, § 44932.) The District's action only added a regulation. It did not alter the statutory causes and procedures for dismissal, nor did it require Messick to waive any protected statutory rights.

## DISPOSITION

The judgment is affirmed. Costs on appeal are awarded to the District. (Cal. Rules of Court, rule 8.278(a).)

Scotland, P. J., and Cantil-Sakauye, J., concurred.