Filed 7/30/21  Colley v. William S. Hart Union High School CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| EDWARD COLLEY et al., | B292902 |
| Plaintiffs and Respondents, | |
| v. | (Los Angeles County Super. Ct. No. BS157804) |
| WILLIAM S. HART UNION HIGH SCHOOL DISTRICT, | |
| Defendant and Appellant. | |
| WILLIAM S. HART UNION HIGH SCHOOL DISTRICT, | B300921, B303892 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BS173394) |
| v. | |
| COMMISION ON PROFESSIONAL COMPETENCE, | |
| Defendant; | |
| EDWARD COLLEY, | |
| Real Party in Interest and Respondent. | |

APPEALS from orders of the Superior Court of Los Angeles County, James C. Chalfant, Judge. Affirmed and remanded with directions.

Adams Silva & McNally, Kerrie E. McNally, Laurie E. Kamerrer; Littler Mendelson and Barrett K. Green for Appellant William S. Hart Union High School District.

Egality Law and Tamra M. Smith for Respondents Edward Colley and Frederick Malcomb.

_____

Respondents Edward Colley (Colley) and Frederick Malcomb, Jr. (Malcomb) were teachers working for appellant William S. Hart Union High School District (District) when they were terminated by District as probationary employees.[1] Colley and Malcomb filed a joint petition for a writ of mandate (Code Civ. Proc., § 1085) in which they sought reinstatement as permanent employees as well as back wages and benefits and attorney fees. On September 27, 2016, the court granted the petition, ordered District to set aside its termination of Colley and Malcomb, and directed District to conduct a hearing regarding back pay and benefits. District complied in part by reinstating Colley and Malcomb. The proceedings under this mandate petition, which continued in the superior court until

---

[1] Technically, the District invoked Education Code section 44929.21, subdivision (b) in notifying Colley and Malcomb of their "non-election" as probationary teachers for the coming school year. This provision applies to probationary teachers in their second year of teaching.

2

August 6, 2018, will be referred to as the "1085 mandate" proceedings.

On November 17, 2016, District initiated termination proceedings against Colley and Malcomb under Education Code section 44932[2] (grounds for dismissal of permanent employees). Malcomb, having received an offer for a higher paying job, resigned his position before the administrative hearing on these termination proceedings.

District's case against Colley was heard by the Commission on Professional Competence (CPC) and resulted in a decision in Colley's favor. The CPC concluded that Colley's conduct did "not rise to the level of intentional misconduct" and was "not related to his fitness to teach." The CPC found that District had not established that there was cause for Colley's dismissal. The CPC concluded that Colley was to be retained as a permanent certified employee of District.

On April 23, 2018, District filed a petition for a writ of administrative mandate (Code Civ. Proc., § 1094.5) seeking to set aside the CPC's decision. These proceedings will be referred to as the "1094.5 mandate."

On August 6, 2018, the court entered a final judgment in the 1085 mandate proceedings. In addition to setting aside District's termination of Colley and Malcomb as probationary employees and directing their reinstatement as permanent certified employees, the court awarded Colley back pay in the amount of $114,427.88 and Malcomb back pay in the amount of $84,382. The court awarded both men prejudgment interest, sick

---

[2] Undesignated statutory references are to the Education Code.

leave, and other employer contributions not material to this appeal.  The court awarded counsel for Colley and Malcomb attorney fees of $271,483.50.  District appealed.

On August 8, 2019, the court denied District's petition in the 1094.5 mandate proceeding, and a final judgment thereon was entered on September 4, 2019.  District appealed.

We have consolidated the appeals for briefing, oral argument, and decision.

We conclude that Colley and Malcomb were permanent and not probationary employees and therefore affirm the superior court's order granting the petition for the 1085 writ of mandate.  We also conclude that substantial evidence supports the superior court's finding that District failed to establish the grounds upon which it terminated Colley.  Accordingly, we affirm the order denying the petition for the 1094.5 writ of mandate.  We remand the 1094.5 mandate proceedings to the superior court with directions to implement the decision of the Commission on Professional Competence.

## FACTS

### I.  Colley and Malcomb

Colley, a retired captain in the United States Air Force, was hired by District in September 1995 as a Reserve Officer Training Corps (ROTC) instructor.  He holds a Designated Subjects Special Subjects Credential in Reserve Officer Training issued by the California Commission on Teacher Credentialing (CTC).  He also holds an Administrative Services Credential issued by the CTC which authorizes him to work as a school administrator.  Colley was certified by the United States Air Force to teach United States Air Force Junior ROTC courses (JROTC).

Colley's first year of teaching was 1995–1996. He was reemployed by District in 1996–1997 and every year thereafter until June 2015.

Malcomb is a retired master sergeant in the United States Air Force. He holds a Designated Subjects Special Subjects Credential in Reserve Officer Training, as well as a Pupil Personnel Services Credential that authorizes him to work as a school counselor. Malcomb was certified by the United States Air Force to teach United States Air Force JROTC courses. He was hired by District in August 2004 for the year 2004–2005 and was reemployed by District every year thereafter until the end of the 2014–2015 school year.

Colley served as the senior aerospace science instructor and as commanding officer of JROTC Unit CA-782 at Valencia High School. Colley and Malcomb divided their responsibilities, with Colley handling accounting, finances, and fundraising. Malcomb was primarily responsible for Air Force equipment, other property, logistics, curriculum, and community events. To meet Air Force requirements, Colley appointed Malcomb as the primary Information Technology Equipment Custodian (ITEC) responsible for ordering and conducting inventory of computer and other electronic equipment. Malcomb was also appointed to be the Military Property Custodian (MPC). Malcomb was responsible for IT matters generally.

## II. Colley and Malcomb fail to comply with Air Force Automated Data Processing Equipment (ADPE) documentation

The ADPE process required an annual inventory of electronic equipment, as well as an equipment custodian and a MPC letter on file.

5

On March 7, 2014, Air Force Headquarters sent e-mails to all JROTC units informing them that all units had to comply with ADPE accountability requirements by April 10, 2014. Compliance required four documents, one of which was an inventory listing signed by the commanding officer and the ITEC person. The other three documents were the letter appointing the ITEC and ITEC training certificates for the Primary ITEC and Alternate ITEC.

In January 2014, Malcomb had sent Air Force Headquarters the MPC appointment letter. According to Malcomb, he had also sent headquarters the inventory list in January but there appears to be no trace of this in the record. Colley and Malcomb both thought that the foregoing complied with the March 7, 2014 directive regarding ADPE accountability requirements.

On April 7 and 11, 2014, in two separate communications, Air Force Headquarters notified Colley's Unit CA-782, as well as other JROTC units, that they were not compliant. Colley and Malcomb took no action because they believed they had complied with the March 7, 2014 directive.

On April 22, 2014, the JROTC director at Air Force Headquarters, Wayne Barron, notified Valencia High School with copies to Colley and Malcomb that both men had been put on probation by the Air Force for failing to comply with the ADPE directive.

The ITEC appointment letter and the inventory were submitted by Malcomb by April 29, 2014. Colley's and Malcomb's probation was then terminated.

In anticipation of the next ADPE directive, Malcomb prepared an inventory in January 2015. On March 14, 2015, the

JROTC director at Air Force Headquarters sent out a reminder that the ADPE documentation was due by April 10, 2015.

On April 17, 2015, JROTC headquarters sent an e-mail to Unit CA-782 and the principal at Valencia High School, as well as other JROTC units, that the ADPE documentation had to be completed by April 24, 2015, or the unit would be put on probation. The notice went on to warn that "Decertification consideration will be given to those who fail to complete" this task by April 24, 2015.

On Friday, April 24, 2015, Director Barren of JROTC headquarters e-mailed Colley and Malcomb, noting that their unit had not yet complied and asked them to call him. Colley called but could not reach Barron. Colley e-mailed Malcomb, who was out of town, asking what the issue was. When Malcomb returned on Monday, April 27, 2015, he e-mailed Barron that he would make sure that the work would be completed by Tuesday.

Malcomb sent to headquarters the inventory and the ITEC appointment letter on April 28, 2015. Not realizing on April 28, 2015, that the ITEC training certificates were also due, Malcomb sent these to headquarters only on May 7, 2015.

On May 18, 2015, the director of JROTC at headquarters removed Colley's and Malcomb's certifications as Air Force JROTC (AFJROTC) instructors. The memoranda effecting this removal noted in identical language that Colley and Malcomb had been put on probation in 2014 for failure to comply with ADPE procedures and had again failed to comply in 2015. "Your inability to comply with AFJROTC requirements even after direct Headquarters involvement and reminders more than warrant decertification and are clear indicators of unsatisfactory performance."

### III. Colley and Malcomb file an administrative appeal and then unsuccessfully pursue an action in United States District Court

Colley and Malcomb appealed the decertification decision to the competent Air Force authority. Their appeals were rejected on the ground that they had failed to comply with AFJROTC directives regarding the ADPE process for two years in a row.

Colley and Malcomb filed an action in the United States District Court in which they sought an injunction barring the Air Force from revoking their certificates to teach JROTC courses. The action was subject to the federal Administrative Procedures Act, which requires a reviewing court to set aside a final agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." (5 U.S.C. § 706(2)(A).) The district court concluded that substantial evidence supported the decertification decisions, that the Air Force had the authority to decertify Colley and Malcomb, and that the Air Force's decision was not arbitrary, capricious, or otherwise contrary to law. The circuit court of appeals affirmed the district court's reasoning and judgment.

## DISCUSSION

### I. COLLEY AND MALCOMB WERE PERMANENT EMPLOYEES WHEN THEY WERE TERMINATED IN 2015

#### (The 1085 mandate proceedings)

District contends that Colley and Malcomb were probationary employees when they were terminated on June 18,

8

2015. As probationary employees, they could be terminated without any showing of cause at the end of the school year.[3]

District's principal rationale for the argument that Colley and Malcomb were probationers is that they were supposedly hired under section 44909 which, according to District, made them probationary employees. As we explain below, section 44909 has no application to the facts of this case. We first show, however, that the record contradicts District's claim that the two men were probationary employees.

1. *The record contradicts District's claim that Colley and Malcomb were probationary employees*

The letters terminating Colley and Malcomb both base the terminations on section 44292.21, subdivision (b).[4] Both letters

---

[3] "In general, permanent employees may not be dismissed unless one or more statutorily enumerated grounds are shown. (§ 44932.) Probationary employees may not be dismissed during the school year except for cause or unsatisfactory performance (§ 44948.3), but, on timely notice, 'may be nonreelected without any showing of cause, without any statement of reasons, and without any right of appeal or administrative redress.'" (*Kavanaugh v. West Sonoma County Union High School Dist.* (2003) 29 Cal.4th 911, 917.) As appears in our following discussion, "nonreelected" is a term of art based on section 44929.21, subdivision (b) and means that the probationer is not asked to return to teach in the next school year.

[4] "Every employee of a school district of any type or class having an average daily attendance of 250 or more who, after having been employed by the district for two complete consecutive school years in a position or positions requiring certification qualifications, is reelected for the next succeeding school year to a position requiring certification qualifications shall, at the commencement of the succeeding school year be

9

state that "[u]nder Education Code section 44292.21(b), this notice is to inform you that at its regular meeting on June 17, 2015, the Board of Trustees of the William S. Hart Union High School District took action to release you from your probationary employment as a certificated employee with the District."

There are two sets of facts which negate the District's contention that Colley and Malcomb were probationary employees for the 20 and 11 years respectively that they worked for District.

The record shows that after having served two years as probationary employees, District treated Colley and Malcomb as tenured or permanent employees. This appears not only from the uncontradicted declarations under penalty of perjury by both men but also from teacher evaluation forms and teacher listings generated by District. This certainly comports with the plain language of section 44929.21, subdivision (b), which provides that after two years of teaching as a probationer, the teacher becomes a permanent employee. In fact, the general rule is that after two years a probationary employee attains permanent status.

---

classified as and become a permanent employee of the district. [¶] The governing board shall notify the employee, on or before March 15 of the employee's second complete consecutive school year of employment by the district in a position or positions requiring certification qualifications, of the decision to reelect or not reelect the employee for the next succeeding school year to the position. In the event that the governing board does not give notice pursuant to this section on or before March 15, the employee shall be deemed reelected for the next succeeding school year." (§ 44929.21, subd. (b).)

10

(*California Teachers Assn. v. Vallejo City Unified School Dist.* (2007) 149 Cal.App.4th 135, 150.)

In a footnote, District contends that an "erroneous notation on a District document stating an employee was tenured" does not confer such a status when this would be contrary to the Education Code. "We do not have to consider issues discussed only in a footnote." (*Evans v. Centerstone Development Co.* (2005) 134 Cal.App.4th 151, 160.) In any event, dealing with Colley and Malcomb as tenured teachers for 18 and 9 years respectively is much more than an "erroneous notation." District was under an affirmative duty imposed by section 44916[5] to classify Colley and Malcomb in July of each year, which District did, year after year, as Colley and Malcomb attested. As our Supreme Court explained, informing teachers of their classification is an important safeguard for teachers with which governing boards must comply. (*Kavanaugh v. West Sonoma County Union High School Dist., supra,* 29 Cal.4th at p. 921.) District's acknowledgment, year after year, that Colley and Malcomb were tenured binds District.

In sum, there is nothing in the record that contradicts that Colley and Malcomb were permanent, tenured teachers for 18 and 9 years respectively.

The second fact that contradicts District's position is that the termination letters of June 18, 2015, were in direct

---

[5] "The classification shall be made at the time of employment and thereafter in the month of July of each school year. At the time of initial employment during each academic year, each new certificated employee of the school district shall receive a written statement indicating his employment status and the salary that he is to be paid." (§ 44916.)

11

contradiction to the provision of section 44929.21, subdivision (b) that the governing board must notify the employee on or before March 15 of the employee's second complete consecutive school year of employment of the decision not to reelect the employee. (See *ante*, fn. 4, for the text of section 44929.21, subd. (b).) Not only was 2015 not the second complete consecutive year of employment for either man, the notice was given well after March 15. The consequence of that was, according to the statute, that the employee was deemed reelected for the next succeeding school year. (§ 44929.21, subd. (b).)

It is obvious that section 44929.21, subdivision (b) simply did not fit the situation that the District and Colley and Malcomb faced in 2015. That situation was that Colley and Malcomb were both permanent, tenured teachers and District wanted to terminate both men in June 2015. One way to accomplish that was to attempt to classify them as probationary employees.

*2. Section 44909*

Perhaps the District now concedes that its reliance on section 44929.21 was misplaced as it shifted its contention to arguing that Colley and Malcomb were probationary employees under section 44909.

Section 44909 authorizes school districts to employ teachers who are under contract with public or private agencies or who teach "categorically funded projects." Categoric funding means that funds are supplied by outside agencies for a specific purpose.[6] An example of this is the federal gifted and talented

---

[6] "Category" is meant to refer to a specific group of persons who are assisted by a specific government program. (*Zalac v. Governing Bd. of Ferndale Unified School Dist.* (2002) 98 Cal.App.4th 838, 844–845.)

12

education (GATE) program. (*Sullivan v. Calistoga Joint Union School Dist.* (1991) 228 Cal.App.3d 1313, 1315 (*Sullivan*).) Because funding in such programs is not controlled by the school district and may therefore be curtailed, leaving the district with tenured teachers on its hands for whom there are no positions, section 44909 allows school districts to hire teachers for programs such as GATE without putting the teachers on track to tenure. (See *Zalac v. Governing Bd. of Ferndale Unified School Dist., supra,* 98 Cal.App.4th at p. 845.) Persons hired under the authority of section 44909 "may be employed for periods which are less than a full school year and may be terminated at the expiration of the contract or specially funded project without regard to other requirements of this code respecting the termination of probationary or permanent employees other than Section 44918." (§ 44909.)

There is one very important limitation on section 44909 hiring, however. That is that the person hired must have agreed in writing to the terms of the section 44909 hire: "The terms and conditions under which such persons are employed shall be mutually agreed upon by the employee and the governing board and such agreement shall be reduced to writing." (§ 44909.) The reason for this limitation is of course obvious. A person employed under section 44909 does not have the rights upon termination of a probationary or permanent employee.

There is another reason why section 44909 does not apply to this case. District assumes that a person teaching in a categorically funded program is a probationary employee. That is not necessarily the case. As we discuss in part 4, *post, Stockton Teachers Assn. CTA/NEA v. Stockton Unified School Dist.* (2012) 204 Cal.App.4th 446, 459 (*Stockton*), held that a person teaching

13

in a categorically funded program that has been terminated was a temporary, not a probationary employee. (*Id.* at p. 465.)

### 3. *The requirements of a written agreement*

"By its terms, section 44909 requires that in order to classify a certificated employee as a categorically funded employee the terms and conditions of employment under which such persons are employed must be mutually agreed upon by the employee and the school district's governing board, and such agreement must be reduced to writing." (*Sullivan, supra,* 238 Cal.App.3d at p. 1318.) *Sullivan* holds that this provision is to be taken literally.

Donnie Sullivan was hired for the school year 1985–1986 for the school improvement (SIP) and the GATE programs. She was rehired for the same programs for the year 1986–1987. For the year 1987–1988, the Elementary and Secondary Education Act of 1965 (1965 Act) program was added to her teaching load. She was rehired for the 1965 Act and the SIP and GATE programs for the year 1988–1989. (*Sullivan, supra,* 238 Cal.App.3d at p. 1315.)

In the teacher assignment sheet for the year 1988–1989, Sullivan was mistakenly listed as "tenured." (*Sullivan, supra,* 238 Cal.App.3d at p. 1316.) When her supervisor, John Burke, discovered the error, he wrote Sullivan in early 1989 that she had been hired for a categorically funded position and since there were questions about funding her position, she would be terminated as of the 1988–1989 year. Sullivan responded by claiming to be a permanent employee and stating that she had not been given proper notice or a hearing regarding her termination. Burke replied that Sullivan had always been a categorically funded teacher. When the teacher assignment sheet

14

came out in April 1989, she was listed as categorically funded. Sullivan replied by substituting "tenure" for categorically funded and writing Burke that she was a tenured or permanent employee. As it turned out, the school district did receive funding for Sullivan's position for the 1989–1990 school year. There was one more round between the school district and Sullivan during which both sides maintained their opposing positions. In March 1990, Burke notified Sullivan that since there were questions about funding her position, her services were being terminated at the end of the 1989–1990 school year. (*Id.* at pp. 1316–1317.)

According to Burke, Sullivan taught only under the SIP, GATE, and 1965 Act programs, all of which were categorically funded or specially funded programs. Sullivan maintained that she never executed an agreement under which she agreed to serve as a categorically funded teacher. (*Sullivan, supra,* 238 Cal.App.3d at p. 1317.) The school district's counsel conceded at oral argument on appeal that there was no writing specifically stating that Sullivan was a categorically funded employee. (*Id.* at p. 1318.)

The trial court agreed with the school district and ruled that Sullivan was a categorically funded employee pursuant to section 44909 who had been at various times erroneously classified as a probationary or permanent employee. (*Sullivan, supra,* 238 Cal.App.3d at p. 1317.)

The Court of Appeal disagreed. It rejected the argument that the assignment sheets listing Sullivan as a categorically funded employee complied with section 44909's requirement of a writing embodying the agreement to serve as a categorically funded employee. The assignment sheets did not "satisfy the clear requirement of section 44909." (*Sullivan, supra,* 238

15

Cal.App.3d at p. 1319.) The reviewing court held that the school district had failed to comply with section 44909. (*Sullivan,* at p. 1319.)

In addition to requiring an actual written agreement to serve as a section 44909 employee, *Sullivan* also confirms that it is perfectly possible to maintain categorically funded programs without a teacher who has agreed in writing to serve as the teacher of these programs. That is, it is possible to have a categorically funded program without a teacher who has agreed to the terms of section 44909. The net effect of such a situation is to leave the school district with the problem of a teacher it may wish to but cannot summarily terminate.

*Sullivan* also precludes the argument that the agreement to serve as a section 44909 teacher can be implied from the fact of service as such a teacher. That appears to have been the trial court's view but it was not the view of the Court of Appeal.

Because there was no written agreement by Colley and Malcomb to the terms that satisfy section 44909, that section has no application to this case.

*4. District's contentions are without merit*

District contends that Colley and Malcomb "point to no authority to support their insistence that their employment contract should have explicitly stated that they would not receive tenured status in addition to identifying their probationary status." District is mistaken. Colley and Malcomb cited pertinent authority, including section 44909, in their extended argument that the provision requiring an express written agreement to the terms of section 44909 hiring was not followed in this case, i.e., that there is no written agreement to the terms

16

of section 44909 in either Colley's or Malcomb's employment contract.

District is also mistaken in contending that at the "time of their initial employment, the District notified [Colley and Malcomb] of their probationary status and identified that they would be employed until they were released as a probationary employee." Neither Colley's nor Malcomb's contract contains any such provision. While under their contracts one of the reasons given for termination is "[t]ermination of probationary employment due to nonelection under Education Code 44929.21,"[7] there is no provision that they would be employed "until they were released as a probationary employee." Their contracts conform to the usual practice and to what actually happened in this case. That is, they were initially on probation for two years and, having been asked to return ("reelected") for a third year, they became permanent tenured employees.

District appears to take the position that since the AFJROTC program was categorically funded, Colley and Malcomb must have been hired under the auspices of section 44909. Colley and Malcomb admit that the AFJROTC program was *in part* funded by categorical funds. However, they point out that section 44909 does not automatically apply to all persons who teach in a categorically funded program. To begin with, section 44909 states that a school district "may" employ persons under the terms and conditions of section 44909. This comports with the concept that section 44909 exists to give school districts flexibility in hiring, not to impose a hiring regime on the district

---

[7] Colley's contract referred to section 44882, which was repealed and replaced, as in Malcomb's contract, with section 44929.21.

17

that it may not wish to follow. In addition, the unambiguous requirement of a written agreement to the terms of section 44909 inevitably means that there will be some potential hires who will not want to agree to the terms of section 44909, which means that if they are hired, they will not be subject to section 44909. Thus, section 44909 does not inevitably apply to Colley and Malcomb simply because they taught in a program financed in part by categorical funds.

District also contends that Colley and Malcomb claim that they were "probationary 0" employees[8] and therefore, as temporary employees, should have been given notice that they were on "non-tenure" track positions. Colley and Malcomb never advanced the claim that they were "probationary 0" employees. Colley and Malcomb have always maintained that they were permanent tenured employees when they were terminated in 2015. It would have been nonsense for Colley and Malcomb to claim that they were "probationary 0" employees.

Another misleading and erroneous claim set forth by District is that section 44909 hires are probationary employees. District cites *Stockton, supra,* 204 Cal.App.4th at page 459 in support. The reason that District makes this claim is to buttress the improbable idea that Colley and Malcomb were probationary employees for 20 and 11 years respectively.

*Stockton* addressed the question whether a number of employees of the school district were temporary or probationary employees. The evidence was inconclusive about the programs

---

[8] "Probationary 0" employees are probationers whose time served does not count toward permanent status and who cannot acquire tenure. These are usually persons who are hired before they are fully credentialed.

for which these employees had been hired. (*Stockton, supra*, 204 Cal.App.4th at pp. 464–465.) The school district claimed that the employees were temporary. In order to prove that the employees were temporary under section 44909, the school district had to essentially prove that the employees had worked under contract with public or private agencies or on categorically funded projects and that the contract or project had expired.[9] If these conditions had not been met, the employees had to be treated as probationary.

It appears that *Stockton* held the exact opposite of what District claims it held. If the employment fit the pattern of a public contract or a categorically funded project that had been terminated, i.e., if it conformed to the purposes of section 44909, the employee was temporary. If not, the employee had probationary status. In any event, as previously stated, *Stockton* has no application to this case given the absence of any agreement by Colley and Malcomb to the terms that conform to section 44909.

District suggests that we should apply section 44912, which exempts from tenure teachers of military drill in the California

---

[9] "To prove that its employees were temporary under section 44909, District was required (1) to show that the employees were hired to perform services conducted under contract with public or private agencies or categorically funded projects which are not required by federal or state statutes; (2) to identify the particular contract or project for which services were performed; (3) to show that the particular contract or project expired; and (4) to show that the employee was hired for the term of the contract or project. Because District failed to prove some or all of these facts, the employees must be treated as probationary." (*Stockton, supra,* 204 Cal.App.4th at p. 465.)

Cadet Corps (California National Guard). This we decline to do since Colley and Malcomb taught United States AFJROTC to which the Legislature has not extended section 44912.

We conclude that Colley and Malcomb were not probationary employees when District terminated them without a hearing on June 18, 2015. Accordingly, as permanent employees, they were entitled to a hearing under section 44944.

## II. COLLEY AND MALCOMB WERE ENTITLED TO BACK PAY
### (The 1085 mandate proceedings)

Section 44830, subdivision (a) provides in relevant part that "a school district shall employ for positions requiring certification qualifications, only persons who possess the qualifications for those positions prescribed by law." District contends that once the Air Force revoked Colley's and Malcomb's certification to teach AFJROTC, the two men were no longer qualified for the JROTC positions and they could therefore no longer be employed by District. According to District, it was therefore not liable for back pay.

There are two flaws to this argument.

First, the "certification" referred to by section 44830 is plainly the certification regime under California's Education Code. (See Education Code, title 2, part 25, chapters 2 [Teacher Credentialing] and 3 [Certificated Employees].) California has no authority over credentialing by the United States Air Force and obviously cannot regulate it. As noted below, both Colley and Malcomb retained California certifications that entitled them to work for District.

Second, in addition to the Designated Subjects Special Subjects Credential in Reserve Officer Training issued by the

20

CTC held by both men, Colley holds the Administrative Services Credential issued by the CTC, which authorizes him to work as a school administrator, and Malcomb holds a Pupil Personnel Services Credential that authorizes him to work as a school counselor. In fact, District employed Colley as a substitute teacher after he was reinstated in September 2016. Thus, it is not true that Colley and Malcomb could no longer be employed by District after the Air Force revoked the Air Force credentials.

District also claims that a back pay award is barred by section 45055[10] because after the Air Force revoked their certificates, they could no longer "perform the duties of their assignment." This argument fails for the same reason as District's foregoing contention since both men held other valid certifications under which they could be employed by District.

District contends that Colley and Malcomb failed to mitigate their damages in that they did not obtain alternative employment after they were terminated in June 2015. District's principal claim is that neither man undertook to work as substitute teachers after their termination.

It is settled that the alternative employment must be comparable or substantially similar to that of which the employee has been deprived. (*Candari v. Los Angeles Unified School Dist.* (2011) 193 Cal.App.4th 402, 409.) District conceded that "substitute teaching positions are different from regular teaching positions. Significantly, the rate of pay is less." Colley and Malcomb add that the pay is less than a third from the

---

[10] "Except as otherwise provided in this code, no warrant shall be drawn in favor of any teacher, unless the officer whose duty it is to draw the warrant is satisfied that the teacher has faithfully performed all the duties prescribed." (§ 45055.)

21

employment with District that was terminated, there is no health insurance, and no job security. This is not comparable employment.

Further, we note Colley's contention that District refused to give him a letter of recommendation when he requested one in his search for an administrative position. District can hardly complain about Colley's failure to obtain an administrative position when it affirmatively hindered him in that effort.

Colley and Malcomb were entitled to attorney fees under section 44944, subdivision (f)(2) since the judgment of the CPC was that they should not have been dismissed.

## III. DISTRICT FAILED TO ESTABLISH THAT IT HAD GROUNDS TO TERMINATE COLLEY (The 1094.5 mandate proceedings)

District gave two grounds for its termination of Colley. They were "[e]vident unfitness for service" and "[p]ersistent violation of or refusal to obey the school laws of the state or reasonable regulations prescribed for the government of the public schools by the state board or by the governing board of the school district employing him or her," which are set forth, respectively, in section 44932 (grounds for dismissal of permanent employees), subdivision (a)(6) and (8). District gave the identical grounds for its dismissal of Malcomb but, as noted, Malcomb resigned before the hearing on his termination.

*1. Procedural Background*

The CPC concluded that Colley's actions with respect to the Air Force's ADPE documentation requirements did not constitute intentional disregard of Air Force orders and directives. The CPC noted that at various times Colley's actions were not reasonable "and may have even been negligent. But considering

22

the evidence in its entirety, it is concluded that [Colley's] actions or inaction did not rise to the level of intentional misconduct."

The CPC noted that evident unfitness for service is established by conduct demonstrating that the teacher is clearly not fit or suitable for teaching, ordinarily by reason of temperamental defects, citing *Woodland Joint Unified School Dist. v. Commission on Professional Competence* (1992) 2 Cal.App.4th 1429 *(Woodland)*.  The CPC concluded, based on the criteria of *Morrison v. State Board of Education* (1969) 1 Cal.3d 214 (*Morrison*) that Colley's conduct was not related to his fitness to teach.  The CPC concluded that Colley had not violated any laws or regulations.  The CPC ordered that Colley was to be retained as a permanent certified employee of District.

On a 2-to-1 vote, the CPC concluded that District had not established grounds for Colley's dismissal.

The superior court noted that it was required to exercise its independent judgment and, in doing so, was required to afford strong presumption of correctness to the CPC's findings, citing *Fukuda v. City of Angels* (1999) 20 Cal.4th 805, 817.)

The court noted *Woodland's* definition of "evident unfitness for service."  Under that definition, evident unfitness for service means "clearly not fit, not adapted to or unsuitable for teaching, ordinarily by reason of temperamental defects or inadequacies." Unlike "unprofessional conduct," "evident unfitness for service" connotes a fixed character trait, presumably not remediable merely on receipt of notice that one's conduct fails to meet the expectations of the employing school district.  (*Woodland, supra,* 2 Cal.App.4th at p. 1444.)

The court noted that *Woodland* requires a fixed character trait that cannot be remedied.  The court went on to find:  "The

23

District's argument that the court can find evident unfitness for duty because Colley no longer possesses the appropriate certification is completely inconsistent with the requirement of a fixed character trait."

The court considered District's argument that Colley had displayed an arrogant and dismissive attitude. After noting that an attitude is not a character trait, the court examined in detail the evidence that showed that Colley had been cooperative throughout 2014 and 2015 even though, in the end, he had been negligent in March and April 2015 in responding to Air Force Headquarters.

In addressing Colley's fitness to teach, the court noted the factors enumerated in *Morrison* that bear on this issue.[11] The court addressed each of these factors and found that none of them indicated that Colley was unfit to teach.

The court concluded that Colley had not violated any state law or District regulation.

---

[11] "In determining whether the teacher's conduct thus indicates unfitness to teach the board may consider such matters as the likelihood that the conduct may have adversely affected students or fellow teachers, the degree of such adversity anticipated, the proximity or remoteness in time of the conduct, the type of teaching certificate held by the party involved, the extenuating or aggravating circumstances, if any, surrounding the conduct, the praiseworthiness or blameworthiness of the motives resulting in the conduct, the likelihood of the recurrence of the questioned conduct, and the extent to which disciplinary action may inflict an adverse impact or chilling effect upon the constitutional rights of the teacher involved or other teachers." (*Morrison, supra*, 1 Cal.3d at p. 229.)

*2. The scope of review on appeal*

After the superior court makes an independent judgment upon the record of the administrative proceeding before the CPC, the scope of review on appeal is limited. (*San Diego Unified School Dist. v. Commission on Professional Competence* (2013) 214 Cal.App.4th 1120, 1141.) The reviewing court must sustain the trial court's findings if they are supported by substantial evidence. (*Ibid.*) In reviewing the evidence, the appellate court resolves all conflicts in favor of the party prevailing at the trial court level and must give that party the benefit of every reasonable inference in support of the judgment. (*Id.* at pp. 1141–1142.) When more than one inference can be reasonably deduced from the facts, the appellate court cannot substitute its deductions for those of the superior court. (*Id.* at p. 1142.) The trial court's conclusions of law are reviewed de novo. (*Jenron Corp. v. Department of Social Services* (1997) 54 Cal.App.4th 1429, 1434.)

There were two areas of factual inquiry that were contested. One was District's claim that Colley's "attitude" was arrogant and dismissive. The other was whether the *Morrison* factors indicate that Colley was unfit to teach. We find in both instances that the superior court's rulings were supported by substantial evidence and explain our conclusion in the following sections. First, however, we put to rest District's misinterpretation of *Woodland.*

*3. District misconstrues* Woodland

District contends that Colley's lack of an Air Force certification to teach JROTC should be considered as an "additional" showing of his "evident unfitness for service" under section 44932, subdivision (a)(6). That is, District wishes to add

25

to *Woodland* that one is unfit for service as a teacher if one lacks a certification issued by a United States governmental department.

We need not reiterate *Woodland's* extended analysis of the meaning of "evident unfitness for service." (*Woodland, supra,* 2 Cal.App.4th at pp. 1441–1444.) Suffice it to say that the court addressed the meaning of the words "evident" and "unfit" and the difference between "unprofessional conduct," which is also grounds for termination (§ 44932, subd. (a)(2)), and "evident unfitness for service." The court concluded that the *Morrison* factors should be used to determine whether the cited conduct indicates unfitness for service and, if that has been established, the next question is whether the unfitness is "evident," "i.e., whether the offensive conduct is caused by a defect in temperament." (*Woodland,* at p. 1445.)

District's contention that the lack of a United States government certification means a person lacking this is evidently unfit for service finds no support in *Woodland. Woodland* itself refutes District's contention when it holds that " 'evident unfitness for service' requires that unfitness for service be attributable to a defect in temperament—a requirement not necessary for a finding of 'unprofessional conduct.' " (*Woodland, supra,* 2 Cal.App.4th at p. 1445.) *Woodland* made a defect in character or temperament absolutely central to the concept of evident unfitness for service.

District should have taken heed of the distinction *Woodland* made between unprofessional conduct and evident unfitness for service. Unprofessional conduct is a lesser included form of proscribed behavior within evident unfitness for service. "Thus, conduct constituting 'evident unfitness for service' will

26

often constitute 'unprofessional conduct.' But the converse is not true." (*Woodland, supra,* 2 Cal.App.4th at p. 1445.) In this case, Colley's and Malcomb's contracts provided that failure to maintain the Air Force certification was to be deemed unprofessional conduct. Arguably, failing to complete ADPE documentation in a timely manner is unprofessional. Be that as it may, we express no opinion on this subject save to note that District chose not to pursue an avenue that the employment contracts themselves laid down.

We reject District's contention to expand *Woodland* because it flatly contradicts *Woodland* itself.

### 4. *The superior court's finding that Colley was not arrogant and dismissive is supported by substantial evidence*

The court addressed District's argument that Colley was unfit for service because he demonstrated an arrogant and dismissive attitude in failing to comply with Air Force directives.

The court first noted that an arrogant and dismissive attitude is not a character trait but an attitude that can be readily changed. Thus, under *Woodland*, which held that unfitness for service connotes a fixed character trait, an arrogant and dismissive attitude does not amount to a claim of unfitness for service.

The court then addressed the events of 2014 and 2015 and found that Colley had not been arrogant and dismissive. The court noted that Colley generally relied on Malcomb when it came to the care and documentation of equipment. Thus, the first time that Colley became aware of failing to have complied with ADPE documentation requirements was when he and Malcomb were put on probation in April 2014 by the Air Force.

27

Colley immediately met with the high school's principal and assured him that the unit would resolve the problem. Colley also spoke with Malcomb and told him "to get it done." Colley then assisted Malcomb in complying with the documentation requirement. This was successful and Colley's and Malcomb's probation was rescinded.

We note here that these facts show that in 2014 Colley was compliant and cooperative with the Air Force and was neither arrogant nor dismissive.

The year 2015 began with Malcomb thinking that he had done what was required when it came to ADPE documentation. When Colley and Malcomb were told that they were not compliant, they mistakenly thought the contrary. The court opined that this amounted to negligence on Colley's part. When again confronted with their lack of compliance, Colley told Malcomb to do the necessary, which he did, and the documentation was completed with Colley's help. It was only then that the Air Force revoked Colley's and Malcomb's certifications. Again, Colley had been cooperative and compliant in 2015 and not arrogant.

The court's finding that Colley had not been arrogant and dismissive is supported by substantial evidence.

>    5. *The superior court's finding that Colley satisfied the* Morrison *factors is supported by substantial evidence*

The court examined the *Morrison* factors and found that under those factors Colley was fit for service. (See *ante*, fn. 11, for the *Morrison* factors.) In each instance, the court based its conclusion on facts of record.

District contends that substantial evidence does not support a finding in favor of Colley on the *Morrison* factors. In

making this argument, District stands the substantial evidence standard on its head by ignoring evidence that supports the judgment and citing to evidence that contradicts the evidence that supports the judgment.[12]

*Adverse effect on students and teachers*

The court agreed with the CPC that the failure to submit the ADPE documentation in a timely manner did not adversely affect students or fellow teachers. Although there was a temporary freeze on obtaining new equipment, that was resolved when the documentation was completed. As noted, District ignores this finding (which supports the conclusion that the *Morrison* factors favor Colley) and contends that the revocation of Colley's Air Force certificate adversely affected the students. Since it was the Air Force that revoked the certificate, a decision that Colley energetically contested, this negative factor cannot be ascribed to Colley.

*Remoteness in time*

The court found that the conduct in question was not remote in time.

*Type of credential*

The court found that in addition to the ROTC credential, Colley was also credentialed in administration.

District again seizes on the negative aspect of Colley's credential in administration, contending that the District did not

---

[12] In reviewing the evidence, the appellate court resolves all conflicts in favor of the party prevailing at the trial court level and must give that party the benefit of every reasonable inference in support of the judgment. (*San Diego Unified School Dist. v. Commission on Professional Competence, supra,* 214 Cal.App.4th at pp. 1141–1142.)

29

hire him for that purpose. The positive aspect of this factor is that Colley was employable in a field other than JROTC.

*Aggravating and mitigating circumstances*

While the court found that Colley had acted unreasonably (in relying extensively on Malcomb) and negligently, the court found Colley did not do anything willfully wrong and attempted to comply with Air Force directives. The Air Force directives were communicated by e-mail and not by established methods of instructions in a manual. These were extenuating factors.

Once again ignoring the substantial evidence standard, District asks us to draw unfavorable inferences from the fact that Colley was put on probation in 2014, that he initially ignored Air Force directives in 2015, and that he was decertified. District ignores the favorable inferences drawn by the trial court from the facts that Colley attempted to comply with Air Force directives, that he affirmatively assisted Malcomb in complying with Air Force directives, and that he did nothing willfully wrong.

*Likelihood of recurrence*

In light of the severity of the decertification, the court agreed with the CPC that the likelihood of recurrence was low.

District again focuses on the negative that Colley at one point was put on probation from which District draws the unfavorable inference that Colley is likely to repeat his misconduct.

*Blameworthiness or praiseworthiness*

Colley did try to ascertain whether Malcomb had complied with the directives, and he worked with Malcomb both in 2014 and 2015 to complete the documentation. "Colley acted imprudently, but his motivation always was to comply with Air Force requirements. This is a praiseworthy motive."

The *Morrison* factors add up to the conclusion that Colley was not unfit for service.

### 6. *The court correctly ruled that Colley had not violated any school laws or District regulations*

District contends that this case is analogous to *Governing Bd. of Ripon Unified School Dist. v. Commission on Professional Competence* (2009) 177 Cal.App.4th 1379 (*Ripon*). However, in stating that the Court of Appeal in *Ripon* "upheld the teacher's termination under Section 44932(a)(8) based on noncompliance with the contractual commitment of the teacher," District misrepresents both the facts and the law laid down in *Ripon*.

In *Ripon,* the school district developed a plan that required all of its certified teachers to sign a written commitment agreeing to obtain a certification to teach English to children who do not speak that language. (*Ripon, supra,* 177 Cal.App.4th at p. 1383.) Theresa Messick, a certified music teacher, refused to sign the written commitment to receive training for this English language program, and she never took the training. (*Ripon,* at pp. 1383–1384.) The school district commenced termination proceedings against Messick. She challenged the school district's right to require her to obtain the certification. The Court of Appeal rejected her challenge and held that the school district had the authority to require Messick to obtain the training for the English language program. (*Id.* at pp. 1389–1390.)

Contrary to District's representations, there was no "contractual commitment" in *Ripon*; in fact, Messick refused to enter into such a commitment. In addition, the only pertinent point decided in *Ripon* was the school district's authority to require the English teaching certification from its teachers; Messick had not been terminated as the hearing to that end had

31

not taken place. Thus, it was definitely *not* decided by *Ripon* that Messick was validly terminated under section 44932, subdivision (a)(8) (violation of laws and regulations).

The superior court concluded that Colley had not violated any laws or regulations. We agree with that conclusion. District's argument that Colley's failure to conform to Air Force directives regarding ADPE documentation is without merit. United States Air Force directives do not qualify under section 44932, subdivision (a)(8).[13] We also agree with the court's observation that a breach of the employment contract is not a violation of laws or regulations covered in section 44932, subdivision (a)(8).

*7. Conclusion*

District has failed to show that it had grounds to terminate Colley.

---

[13] "Persistent violation of or refusal to obey the school laws of the state or reasonable regulations prescribed for the government of the public schools by the state board or by the governing board of the school district employing him or her." (§ 44932, subd. (a)(8).

32

**DISPOSITION**

The order granting the petition for a writ of mandate under Code of Civil Procedure section 1085 and the order denying the petition for a writ of mandate under Code of Civil Procedure section 1094.5 are affirmed.

The Code of Civil Procedure section 1094.5 mandate proceeding (*William S. Hart Union High School District v. Commission on Professional Competence* (Super. Ct. L.A. County, 2019, No. BS173394) is remanded to the superior court with directions to implement the decision of the Commission on Professional Competence. Colley and Malcomb are to recover their costs on appeal.

**NOT TO BE PUBLISHED.**


LUI, P. J.

We concur:


CHAVEZ, J.


HOFFSTADT, J.

33